UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMPLICON, INC. d/b/a American Technologies                04-CV-0394E(Sc)
   Credit, Inc.,                                                          (Bkrtcy Case No. 99-11240B)

                  Appellant,

      -vs-                                                                         MEMORANDUM

CNB INTERNATIONAL, INC.,                                                    and

                 Appellee.                                          ORDER[1]
_____

     Presently before the Court is an appeal precipitated by a March 30, 2004 Order

of the Bankruptcy Court ("the Bankruptcy Order"), in which United States Bankruptcy

Judge Carl L. Bucki found in favor of Appellee and Debtor, CNB International, Inc.

("CNB"), with respect to the administrative expense claim of Appellant Amplicon,

Inc. d/b/a American Technologies Credit, Inc. ("Amplicon").  The Bankruptcy Order

found that the alleged lease under which Amplicon claims entitlement to amounts

due was not a "true lease" and denied Amplicon an administrative claim in excess

of the amounts already paid by CNB.  Amplicon appealed the Bankruptcy Order on

May 27, 2004, seeking its reversal, a finding that the lease in dispute was a "true

lease" and an order of rent due.  For the reasons set forth below, the Bankruptcy

Order will be affirmed.

     This Court reviews the Bankruptcy Court's legal conclusions *de novo* and its

findings of fact for clear error.  *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388

---

[1]This decision may be cited in whole or in any part.

(2d Cir. 1990) (citing Fed. R. Bankr. P. 8013).   The Court "may affirm, modify, or reverse [the Bankruptcy Order] or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.   Amplicon seeks, pursuant to 11 U.S.C. §365(d)(5)[2], the allowance of an administrative claim for rent and other payments due under an alleged lease of computer software between Amplicon and CNB (hereafter "the Agreement").   Section 365(d)(5) of the Bankruptcy Code provides for timely performance of all obligations under a lease of personal property first arising on or after sixty days from the date of the bankruptcy filing.  For Section 365(d)(5) to apply, the lease at issue must be a "true" or "bona fide" lease.  *See, e.g., In re Circuit-Wise, Inc.*, 277 B.R. 460, 462 (Bankr. D. Conn. 2002) ("Under other subsections of Bankruptcy Code § 365, it is well-settled that the term 'lease' (which is not specifically defined in the Code) refers only to 'true' or 'bona fide' leases and does not refer to agreements which, although labeled 'leases', are actually disguised 'security agreements' within the purview of Bankruptcy Code § 101(50).").   If the Agreement is not a true lease, Amplicon's administrative claim will be defined by 11 U.S.C. §503(b), which allows for administrative priority for "the actual, necessary costs and expenses of preserving the estate".  The Court, therefore, must first determine if the Agreement amounts to a "true lease".  The Court need not define the Agreement as a particular type of transaction if found to not be a true lease.  Section 365 applies solely to a "true" or

---

[2]The Bankruptcy Code was last amended on February 27, 2006.  The Bankruptcy Order and this appeal were based on a claim under 11 U.S.C. §365(d)(10), which has since been redesignated to 11 U.S.C. §365(d)(5).  The Court will treat Amplicon's claim as one asserted pursuant to 11 U.S.C. §365(d)(5).

"bona fide" lease and a finding that the Agreement is not a true lease as contemplated by the Bankruptcy Code would be dispositive of this case. *In re PCH Assocs.*, 804 F.2d 193, 198-199 (2d Cir. 1986) ("It is unnecessary, therefore, to identify the transaction as a joint venture, security agreement, subordinated financing, or other investment scheme. Suffice it to say that it is not a bona fide lease for purposes of the Bankruptcy Code.").

The facts and procedural history are detailed in the Bankruptcy Order and will be briefly recited herein. CNB, a manufacturer and marketer of industrial presses, machine tools and related parts, filed its bankruptcy petition on March 10, 1999 ("the Bankruptcy Proceeding"). Before filing for bankruptcy, in 1997, CNB began negotiations for the acquisition of a new computer system, including equipment and a special software package developed by Symix Computer Systems, Inc. ("Symix"). On September 30, 1997, CNB and Symix entered into a Symix Master License Agreement ("the Master License"), which established the terms for CNB's use of Symix's software products and services ("the Products" or "the Symix software"). Pursuant to the Master License, CNB and Symix agreed that "[a]ll trademarks, service marks, patents, copyrights, trade secrets and other proprietary rights in or related to the Products are and will remain the exclusive property of Symix or its licensors" and that CNB could "not assign or transfer (by operation of law or otherwise) all or any part of its rights or obligations under [the Master License] or any Order, including,

without limitation, any License, to any other person, firm or entity without Symix's prior written consent." (Appellee's Additional R. Appeal, Yonaty Decl. Ex. A.)

Subsequently, CNB entered into the Agreement, effective March 6, 1998, under which Amplicon leased[3] to CNB the hardware and software that was to be described in two attached schedules — which were not attached until March 27, 1998 — specifying the various equipment and describing the software, including the Symix software. CNB had had use of the Symix software for less than a year when it filed its bankruptcy petition. Amplicon alleges that it "owned" the Symix software and that Symix had sold the Products to Amplicon. Amplicon, however, has not introduced a contract or licensing agreement between it and Symix describing the sale of the Symix software. In fact, Amplicon has not introduced any signed documentation in support of its assertion. Amplicon's evidence only shows that, on March 30 and April 23, 1998, Amplicon paid monies to Symix for which Amplicon received from Symix an acknowledgment of receipt of payment. These invoices do not contain signatures on behalf of Symix.

On June 30, 1999, Amplicon moved to compel the assumption or rejection of the Agreement and payment of administrative expenses pursuant to Section 365(d). Judge Bucki ordered CNB to either assume or reject the Agreement within two weeks and to make adequate protection payments, pursuant to 11 U.S.C. §363(e), to Amplicon for the use of the computer hardware and software pending CNB's decision

---

[3]The Court's use of the term "lease", unless otherwise indicated, is to describe, not to define as a matter of law, the Agreement between Amplicon and CNB.

to assume or reject.  Judge Bucki issued an order on March 16, 2000 finding that CNB had rejected the Agreement effective October 31, 1999 ("Rejection Order").  The Rejection Order also reserved to Amplicon the right to file a claim for any additional amounts it alleged to be due and owing.  Amplicon so filed for payment of an administrative expense claim for an amount in excess of $450,000 plus interest.  CNB objected, claiming that it had made the adequate protection payments as ordered by Judge Bucki and that Judge Bucki had already reduced CNB's obligations under Section 365(d).  Up to this point, CNB had not objected to the assumption that the Agreement was a true lease.

Judge Bucki, in an Order dated February 16, 2001, held that he had modified CNB's obligations in August 1999, that the modification did not finally determine Amplicon's administrative claim, that Amplicon's claim is essentially a request under 11 U.S.C. §503(b), that Amplicon could properly assert an administrative claim for the unpaid balance of rent and that CNB could challenge Amplicon's claim.  A liquidating plan was confirmed on April 26, 2001, which provided for future payment of the allowed portions of any administrative claims, including Amplicon's claims.  Hearings were held before Judge Bucki, during which the parties settled claims arising from the portion of the Agreement that dealt with computer equipment, leaving for litigation the claim for administrative rent due from the Agreement with regards to the Symix software — *viz.*, the issue addressed in the Bankruptcy Order and currently before this Court.

In the midst of the hearings, on June 20, 2002, Judge Bucki sent a letter ("June 20 Letter") to the parties "invit[ing] further argument and testimony relative to" "whether Amplicon even holds the status of a lessor."  The June 20 Letter described in detail the questions to which the parties should respond and on which the issue of whether the Agreement was a true lease would be decided.  In response, Amplicon moved for partial summary judgment, seeking a declaration that its purported lease of Symix software is a true lease for which it should be allowed an administrative claim for post petition rent in the amount of $222,318, plus interest and attorney's fees.  CNB, in opposition to Amplicon's motion, claimed that the Agreement is not a lease and, because the bankruptcy estate has received no benefit of a value in excess of what it has already paid, Amplicon's administrative expense claim should be dismissed.  Up to this point, both parties had assumed that — and CNB had acted as though — Amplicon was a lessor with respect to the Symix software and Amplicon was a party to "a computer hardware and software lease agreement."  Only subsequent to Judge Bucki's June 20 Letter and in response to Amplicon's motion for partial summary judgment did CNB claim that the Agreement was not a "true" lease.

The Bankruptcy Order acknowledged the fact that, throughout the Bankruptcy Proceedings, both parties had assumed that Amplicon was a "lessor" with respect to the Symix software.  The issue on which Judge Bucki's decision turned, however, was not the parties' prior assumptions but on whether Amplicon had a possessory right in the Symix software such that it could lease it to CNB.  The Bankruptcy Order

found that, at the time Amplicon had entered into the Agreement with CNB and approved the schedules, it held no right or interest in any of the Symix software. This appeal ensued.

In its appeal of the Bankruptcy Order, Amplicon claims that the Bankruptcy Order should be reversed because: (1) Judge Bucki granted *sua sponte* a summary judgment in CNB's favor depriving Amplicon of its due process rights, (2) Judge Bucki erred in failing to construe all evidentiary inferences in Amplicon's favor, (3) Judge Bucki erred in finding that the doctrines of laches, equitable estoppel and waiver do not apply, (4) CNB should be judicially estopped from refuting the validity of the lease agreement with Amplicon, (5) Judge Bucki should have followed the "law-of-the-case" and (6) Judge Bucki erroneously found that the Agreement was not a "true lease". This Court does not find any error in Judge Bucki's holdings and, upon a *de novo* review of the legal issues, will affirm the Bankruptcy Order.

Amplicon first claims that the Bankruptcy Order *sua sponte* granted summary judgment in CNB's favor and thus deprived Amplicon of due process. Amplicon admits that *sua sponte* summary judgment may be entered against a moving party if the facts before the court were fully developed so that the moving party suffered no procedural prejudice. (Opening Br. at 18 (citing *Coach Leatherware Co., Inc.* v. *AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991)).) In this case, Amplicon had ample opportunity to fully develop the facts and was given — via the June 20 Letter — more than adequate notice that the issue of whether the Agreement was or was not a true lease would be litigated. Furthermore, it was Amplicon who moved for a declaration

that the Agreement was a true lease; thus, it presented — or should have presented — all evidence in support of its claim.  In seeking said declaration, Amplicon should have expected that, if Judge Bucki did not find in its favor, the holding would be that the Agreement was *not* a true lease.  As such, the Bankruptcy Order was not a *sua sponte* granting of summary judgment, but rather a decision on Amplicon's motion for partial summary judgment and, by definition, could not prejudice Amplicon.

Amplicon also contends that it would have introduced evidence that there were issues of fact with regard to whether the Agreement *was not* a true lease — evidence that it allegedly did not introduce in support of its claim that the Agreement *was* a true lease — had Judge Bucki provided Amplicon with the opportunity for such.  Judge Bucki's June 20 Letter provided more than enough opportunity for Amplicon to develop and support its argument.  As such, Amplicon cannot, in good conscience, claim that both parties were not put on notice that, before the Bankruptcy Proceeding could go any further, the issue to be resolved was whether *or not* Amplicon and CNB had entered into a true lease.  Thus, Amplicon had ample opportunity to present evidence and argue the issue and no due process violation has occurred.

Next, Amplicon claims that the Bankruptcy Order failed to find all facts in the light most favorable to Amplicon.  In support of its claim, Amplicon contends that Judge Bucki did not construe the intent of the parties and the implication of their actions and CNB's use of the software in Amplicon's favor.  In bankruptcy, however, where a contract may govern the rights or affect the legal consequences of third

parties, "it would be inherently inequitable to allow the parties' choice of label to affect the rights of third party creditors." *In re PCH Assocs.*, at 198.  Thus, the intent of the parties must be construed in light of the equitable concerns of bankruptcy.  In the instant case, there is little, if any, dispute regarding the intent of the parties or CNB's use of the software and Judge Bucki acknowledged the fact that "[t]hroughout most of the proceedings in this case, the parties have assumed that Amplicon ✱✱✱ held the status of a lessor with respect to the Symix software" and CNB "accepted the characterization of the agreement as a lease of personal property."  Bankr. Order at 5-6.  Judge Bucki's findings of fact, therefore, were not erroneous.

Amplicon additionally argues that Judge Bucki erred in finding that the doctrines of laches, equitable estoppel and waiver do not apply in this context.  A bankruptcy court may reconsider a claim and such reconsideration is within the discretion of the bankruptcy court.  11 U.S.C. §502(j)[4]; *In re Yagow*, 62 B.R. 73, 78 (Bankr. N.D. 1986) ("Irrespective of the application of res judicata and collateral estoppel on the issue before the Court, and even if a final judgment on the merits has been rendered, section 502(j) of the Bankruptcy Code permits a bankruptcy court to reconsider previously allowed or disallowed claims.  Orders allowing or disallowing claims can be reconsidered for cause, either on motion of a party or sua sponte.") (citation omitted); *see also In re Pottasch Bros. Co., Inc.*, 79 F.2d 613, 616-617 (2d Cir.

---

[4]11 U.S.C. §502(j) states, in pertinent part:
"A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."

1935) (finding that the bankruptcy court has the "ancient and elementary power" to reconsider any of its orders).  Judge Bucki never issued an order finding that the Agreement was a "true lease".  It was simply an assumption on which the parties relied until the matter had been litigated.  Thus, it was within Judge Bucki's discretion to determine if the issue needed briefing and such exercise of discretion was warranted given the fact that the determination of the issue would affect third parties.  In particular, under the confirmed plan of reorganization, CNB's primary creditor received stock in a new corporation formed to acquire the assets of CNB and to assume liability for all administrative claims.  This new corporation never adopted CNB's earlier, unlitigated position and should not be bound by a legally impermissible label.  Thus, CNB's prior conduct cannot preclude a subsequent inconsistent argument made on behalf of the creditor.  *See, e.g., In re PCH Assocs.*, 949 F.2d 585, 598 (2d Cir. 1991) ("If [secured] transactions, loans and other financing arrangements can be couched in lease terms, and can thereby be assumed by the bankrupt estate, the 'lessor' gains a distinct advantage at the expense of other creditors without a concomitant benefit to the bankrupt estate.") (alteration in original; citation omitted).

In order for the doctrine of laches to apply in the bankruptcy context, the following must exist: "(1) proof of delay in asserting a claim despite the opportunity to do so; (2) lack of knowledge on the defendant's part that a claim would be asserted; and (3) prejudice to the defendant by the allowance of the claim." *Rapf* v. *Suffolk County of N.Y.*, 755 F.2d 282, 292 (2d Cir. 1985) (citation omitted).  The

"elements relating to the party asserting the estoppel defense are: [1] lack of knowledge of the real facts, [2] reliance on the conduct of the party to be estopped, and [3] action based thereon resulting in a prejudicial change of position." *In re John's Meat Emporium, Inc.*, 176 B.R. 700, 706 (Bankr. E.D.N.Y. 1995) (internal quotations and citation omitted).  To show prejudice, "a defendant must show reliance and change of position resulting from the delay." *Rapf*, at 292 (internal quotations and citation omitted).  Here, Amplicon knew that CNB would assert that the lease was not a true lease because Judge Bucki's June 20 Letter stated such and thus cannot claim any lack of such knowledge.  Secondly, Amplicon does not allege that it was prejudiced in any way that amounts to a loss of something to which it was entitled.  Amplicon claims that it withdrew its secured claim and agreed to certain things based on CNB's failure to dispute the nature of the Agreement as a true lease.  Such, without more, does not amount to a "change of position" prejudicing Amplicon because Amplicon has received the administrative claim to which it has been entitled throughout the Bankruptcy Proceeding.

Amplicon also cannot assert that CNB waived its right to claim that the Agreement was not a true lease because, not only was Amplicon given ample opportunity to brief and argue its position, Judge Bucki stated in his June 20 Letter that he would make a determination concerning whether the Agreement amounted to a true lease and identified the particular issues on which his determination would turn. *See, e.g., In re Orosco*, 77 B.R. 246, 250 (Bankr. N.D.Cal. 1987) (finding that the debtor did not waive his objection because the claimant "was given ample

opportunity to brief and argue its position [and] the Court indicated at the ∗∗∗ hearing that [it] would make a determination concerning [such] prior to the conclusion of the hearing").  Judge Bucki was correct in finding that the doctrines of laches, equitable estoppel and waiver do not apply to this case.

Next, Amplicon claims that CNB should be judicially estopped from claiming that the Agreement is not a true lease.  The equitable doctrine of judicial estoppel provides that, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  *New Hampshire* v. *Maine*, 532 U.S. 742, 749 (2001) (internal quotations and citation omitted).  In determining whether to apply the doctrine of judicial estoppel, courts look to three factors: (1) "a party's later position must be clearly inconsistent with its earlier position[, (2)] ∗∗∗ whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled ∗∗∗ [and (3)] whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Uzdavines* v. *Weeks Marine, Inc.*, 418 F.3d 138, 147 (2d Cir. 2005) (quoting *New Hampshire*, at 750-751).  The Second Circuit has "limited the application of judicial estoppel to 'situations where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that

earlier position adopted by the tribunal to which it was advanced' ⁎⁎⁎ [and] 'where the risk of inconsistent results with its impact on judicial integrity is certain.'" *Id.* at 148 (citations omitted).  The circumstances here do not warrant the application of judicial estoppel because Judge Bucki never "adopted" the position that the Agreement was a "true lease" and Amplicon does not assert such.

For the same reason, Amplicon inaccurately claims that Judge Bucki should have followed the "law-of-the-case".  There was no established law-of-the-case as Judge Bucki had not held that the Agreement was or was not a true lease.  Judge Bucki simply conducted the Bankruptcy Proceeding on the assumption of the parties until he realized that said assumption may be unfounded in law.  When he came to this realization, he informed the parties and had the matter litigated.  The principle of the law-of-the-case applies "when a court has *ruled* on an issue [and states that] that decision should generally be adhered to by that court in subsequent stages in the same case."  *United States* v. *Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (citing *Arizona* v. *California*, 460 U.S. 605, 618 (1983) (emphasis added)).  Thus, when no ruling has occurred, the principle cannot be applied.  Accordingly, judicial estoppel and the "law-of-the-case" do not apply to this matter.

Turning to the substantive argument proffered by Amplicon that the Agreement is a true lease, the Court must look to state law to determine if Section 365's limited application to a "true" or "bona fide" lease can be implemented here.  *In re Continental Airlines, Inc.*, 932 F.2d 282, 294 (3rd Cir. 1991).  The Court "is to look to the circumstances of the case and consider the economic substance of the

transaction rather than the locus of title, the form of the transaction or the fact that the transaction is denominated as a 'lease,' to determine whether the transaction embodies a 'true lease' or a financing transaction." *In re PCH Assocs.*, 804 F. 2d at 199 (internal quotations and citation omitted). Amplicon's argument, therefore, that the Agreement and the parties have expressly stated that the Agreement is a true lease does not, without looking to the substance of the transaction, make the Agreement a true lease. *See id.* at 197-201 (dismissing the argument that the "contracting parties who agree on the legal status of their relationship are bound by that expression of intent" where the substance of the transaction does not amount to that which the parties allegedly intended to create).

Under California law — which is essentially the same as New York law on this issue —, a lease is "a transfer of the right to possession and use of goods for a term in return for consideration, but a sale, including a sale on approval or a sale on return, or retention or creation of a security interest is not a lease." Cal. Commercial Code §10103(a)(10). The issue is whether Amplicon had a "right to possess or use" that it could transfer to CNB. Amplicon alleges that the Agreement, the Master License and Amplicon's payment to Symix together show that CNB, Amplicon and Symix "intended to enter into a lease for the Symix software." (Opening Br. at 34.) The treatise that both parties agree is informative on the issue, Raymond T. Nimmer*, The Law of Computer Technology* (3d ed. 1997), states that only "[w]hen the transaction is *fully documented* among all three parties, *** [t]he licensor transfers a possessory right and a conditional use right to the lessor with the understanding that the lessor

will convey the possessory right to the lessee." *Id.* at §8.15 (emphasis added).  It is undisputed that the parties failed to fully document the purported transaction. Amplicon only cites to documentation between it and CNB and provides no signed documentation between Amplicon and Symix.  Amplicon, therefore, did not properly document the alleged transfer of rights and the purported lease between Amplicon and CNB is defective and not a true or bona fide lease.

Amplicon, without a true lease, can only claim entitlement to an additional administrative claim under Section 503(b), which only allows for the "actual, necessary costs and expenses of preserving the estate".  CNB has already made adequate protection payments for its retention of the Symix software and its minimal use of the Symix software coupled with Amplicon's lack of loss of opportunity costs does not warrant additional payments to Amplicon.  Thus, Judge Bucki properly denied Amplicon's claim for additional administrative amounts.

Lastly, Amplicon argues that Judge Bucki, in his February 16, 2001 Order, improperly modified the rent due under the Agreement, claiming that there is no equitable justification for the reduction of administrative rent, that Amplicon did not receive notice of or an evidentiary hearing for the adjustment of rent and that the retroactive nature of the modification was improper.  Amplicon admits that there is little guidance on what a bankruptcy court should consider in balancing the equities and this Court, in reviewing Judge Bucki's considerations, finds that Judge Bucki adequately exercised his discretion in balancing the various factors, including the nature of the property purportedly leased and the use of and benefit from said

property.  Amplicon, as a result of the balancing, received that to which it was entitled and suffered no real damages or loss in opportunity costs.  Moreover, any claim Amplicon makes to a lack of notice or  lack of opportunity to present evidence is unfounded and disingenuous.  This case has been before Judge Bucki for over five years, during which both parties have activity litigated all angles of the bankruptcy. Finally, modification of the rent payments from May 10, 1999 comports with Section 365(d)'s grant of entitlement to a lessor to full performance by the lessee beginning on the sixty-first day after a bankruptcy filing until such lease is assumed or rejected, subject to the discretion of the Bankruptcy Court and the equities of the case.  As mentioned *supra*, the equities of the case warrant Judge Bucki's modification. Therefore, the modification of the administrative rent was proper.

Accordingly, it is hereby **ORDERED** that the March 30, 2004 Order of the Bankruptcy Court is affirmed, that Amplicon's Appeal of the Bankruptcy Order is denied and that the Clerk of the Court shall close this case.

DATED:      Buffalo, N.Y.

March 31, 2006

_____/s/ John T. Elfvin_____
JOHN T. ELFVIN
S.U.S.D.J.